UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00307-MOC

| | |
|---|---|
| **ALFRED F PHILLIPS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff filed an application for Supplemental Security Income ("SSI"), with an alleged onset of disability of June 30, 2008. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision on August 3, 2012, which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for

review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

**IV. Substantial Evidence**

**A. Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B. Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fourth step of the sequential evaluation process, but also made alternative findings at the fifth step.

### C. The Administrative Decision

At step two, the ALJ determined that plaintiff has severe impairments of depression and anxiety. Tr. 140. Plaintiff alleged that he suffered from other impairments, but the ALJ determined that such impairments were not severe as the longitudinal medical record and other evidence did not support a finding that such impairments were expected to last for 12 months in a manner that would significantly limit plaintiff's ability to do basic work activities. Id. Ultimately, the ALJ determined that plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, but restricted such work to simple, routine, repetitive tasks in a nonproduction setting with low social demands, due to his depression and anxiety. Tr. 142-143. With such RFC, the ALJ then determined that plaintiff was capable of performing his part relevant

work as a materials handler and plastics machine operator as such work does not require the performance of activities precluded by plaintiff's RFC. At the fifth step, the ALJ first applied the Medical-Vocational Guidelines and determined that plaintiff was not disabled. Tr. 146. Inasmuch as plaintiff's ability to perform work at all exertional levels had been compromised by nonexertional limitations, the ALJ then provided a Vocational Expert ("VE") with a hypothetical, which accurately portrayed plaintiff's RFC, what, if any, jobs exist in the national economy which plaintiff could perform. The VE then opined that plaintiff could perform the occupations of greenhouse nursery, and animal care. Thus, at the fifth step, the ALJ found in the alternative that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 147.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

1. Whether the ALJ erred by failing to evaluate the effect of Phillips' nausea and vomiting on his ability to work; by failing to include Phillips' nausea and vomiting as severe impairments; by failing to include the effects of nausea and vomiting in the RFC finding; and by failing to mention Phillips' chronic nausea and vomiting in the hypothetical to the VE.
2. Whether the ALJ erred by failing to evaluate the effect of Phillips' inability to sleep on his ability to work; by failing to include

> Phillips' limited sleep as a severe impairment; by failing to include the effects of sleeplessness in the RFC finding; and by failing to mention Phillips' sleeplessness in the hypothetical to the VE.
> 3. Whether the ALJ erred by failing to consider the opinion of Phillips' treating physician, Dr. Amalia Falcon, M.D.
> 4. Whether the ALJ's finding of only moderate limitation in social functioning is supported by his own reasoning.
> 5. Whether the ALJ's Craig Step Two credibility finding is supported by his reasoning.

As the organization of plaintiff's assignments of error cut across the sequential evaluation process, and ultimate question posed by plaintiff is whether the ALJ improperly failed to include certain impairments in his RFC determination. The court will, therefore, regroup the assignments of error for consideration as a challenge to the ALJ's RFC determination.

### 2. First Assignment of Error: The ALJ Improperly Determined Plaintiff's RFC

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Where, as here, an ALJ finds at least one severe impairment, all impairments, both severe and

non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other Severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[1] In this assignment of error, plaintiff challenges the ALJ's consideration or non-inclusion of other, non-severe impairments in his RFC determination.

As discussed briefly above, the ALJ found that while defendant was physically capable of performing a wide range of work activities across the exertional range, plaintiff's severe depression and anxiety restricted him to "simple routine repetitive tasks ['SRRTs'] in a nonproduction setting with low social demands." Tr. 142. The ALJ reached this finding by giving great weight to the opinion provided by state agency psychologist Dr. Lori Brandon Souther, Ph.D. Tr. 144. Dr. Souther reviewed the evidence of record, then opined that Plaintiff was capable of performing SRRTs in a low stress work environment with minimal social demands (Tr. 223, 226, 228, 229, and 230). Dr. Souther also opined that Plaintiff was capable of performing such work notwithstanding her belief that he

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

would have some difficulty with frustration tolerance; that he had moderate difficulties in maintaining social functioning; and that he was moderately limited in his abilities to accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers. Tr. 225, 229, 230. An ALJ may give great weight to such opinions because state agency psychologists are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. § 416.927(e)(2)(i); see also 20 C.F.R. § 416.927(c)(6). Indeed, Dr. Souther's opinion is fully consistent with *plaintiff's* own report filed with the Agency, in which he stated that his impairments did not affect his ability to complete tasks, follow instructions, or understand; that he had no problems getting along with family, friends, and neighbors; and that he socialized with his family on a weekly basis. Tr. 331-32. As such opinion is also fully supported by objective medical evidence, 20 C.F.R. § 416.927(c)(4), plaintiff's objections concerning the ALJ's reliance on Dr. Souther's opinion are overruled as such determination is supported by substantial evidence.

More to the point of the objections, plaintiff contends that in determining RFC the ALJ failed to consider his non-severe impairments of nausea, insomnia, his limitations in social functioning, a one-page progress note generated by treating

physician Dr. Amalia Falcon, M.D., and ultimately his credibility, which the court will now closely consider.

### a. Nausea

Plaintiff's contention that the ALJ failed to consider his nausea is not accurate. First, at step two, the ALJ considered plaintiff's complaints of nausea in March 2012, and found that plaintiff had not refilled his medication for Hepatitis C (the underlying cause of plaintiff's nausea) and that his treating physician had opined that it was unlikely that plaintiff was taking his medication at all. Tr. 140. Further, the ALJ mentioned plaintiff's March 2011 claim of nausea in his discussion of plaintiff's RFC. Tr. 143.

Ultimately, plaintiff's challenge is that the ALJ failed to consider his Hepatitis C as a severe impairment. While the court has no doubt that those who suffer from Hepatitis C have significant medical condition, what the ALJ is attempting to determine is whether that illness, as suffered by this claimant, significantly limits plaintiff's ability to perform basic work activities. Simply being diagnosed with Hepatitis C "'says nothing about the severity of [that] condition.'" Brewton v. Astrue, No. 1:09-cv-188, 2010 WL 3259800, at *6 (W.D.N.C. July 26, 2010), aff'd, 2010 WL 3259795 (W.D.N.C. Aug. 18, 2010) (quoting Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)).

9

Episodic instances of nausea caused by Hepatitis C or, more precisely, failure to take prescribed medication for such condition, is insufficient to support plaintiff's argument that such should have been included in his RFC. The burden of establishing that such condition caused limitations beyond those that the ALJ included in his RFC finding is plaintiff's and he has not satisfied that burden. Ultimately, plaintiff contends that the ALJ should have included his nausea in the hypothetical given to the VE. Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper. Substantial evidence supports such determination. The court overrules plaintiff's objection concerning the ALJ's consideration of his complaints of nausea.

**b. Insomnia**

Plaintiff next contends that the ALJ failed to consider his complaints of insomnia. Again, close review of the ALJ's decision reveals that such complaint was considered by the ALJ. See Tr. 143 &144.

As mentioned above, the ALJ properly gave great weight to the opinion of Dr. Souther as to plaintiff's mental limitations. In turn, Dr. Souther recites and relies on the report of Dr. Brantley, who discussed plaintiff's complaints of insomnia and opined that plaintiff could perform SRRTs notwithstanding his insomnia. Tr. 223, referring to Tr. 430, 432-33. Dr. Souther opined that plaintiff could perform SRRTs in a low stress setting with low social demands, notwithstanding his insomnia. Tr. 223, 226, 228, 229, 230. The limitations caused by plaintiff's reported insomnia were, therefore, adequately provided for in the ALJ's RFC, which fully incorporated Dr. Souther's opinion and limited plaintiff's work to a nonproduction setting with low social demands. Tr. 142-143. As plaintiff did not establish that he suffered from any limitations beyond those included in the RFC finding, notwithstanding his insomnia, plaintiff cannot satisfy his burden as the ALJ properly accounted for such condition in forming his RFC and, ultimately, posing his hypothetical to the ALJ. The court overrules plaintiff's objections related to insomnia.

### c. Dr. Falcon's Progress Note

Plaintiff's next argument is that the ALJ failed to consider a one-page progress note from Dr. Falcon, a treating physician. While plaintiff is correct that the ALJ fails to mention such report, plaintiff's contention that such document is a "medical opinion" is not accurate.

Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). The issue is not whether the ALJ failed to mention a particular piece of evidence in his decision, but whether the ALJ's final decision denying benefits is supported by substantial evidence contained in the Administrative Record.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). An opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). In turn, medical "opinions" are statements that "reflect judgments

about the nature and severity of [the claimant's] impairment(s), including . . . what [the claimant] can still do despite his impairment(s), and his physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

In this case, Dr. Falcon's progress note reflects that plaintiff had been diagnosed with mental impairments. As such note does not contain any medical conclusion or opinion concerning the impact of such diagnosis -- either by expressing an opinion as to the impact on plaintiff's ability to do work-related activities or perform daily activities -- such is not a medical opinion within the meaning of 20 C.F.R. § 416.927(a)(2). Money v. Astrue, No. 5:09-cv-00042, 2009 WL 7449241, at *7 (W.D.N.C. Dec. 9, 2009), adopted, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011). Finally, the fact that Dr. Falcon states in such progress note that "[b]ecause of the intensity of symptoms Veteran has been unable to work…" does not transform such note into a medical opinion. Tr. 520. Assuming that such is not a mere recital of statements made by the patient, such statement at best is a vocational opinion, not a medical one. The ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1). Pursuant to SSR 96-5p, expressions of such beliefs are not entitled to any special significance, because

doing so "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."

Thus, while it may have been error for the ALJ to not mention the progress note, such error is harmless as the document was not a medical opinion. Further, the ALJ gave full consideration to the mental impairments mentioned in such note by giving great weight to the opinion of Dr. Souther and, in turn, by including substantial limitations based on plaintiff's mental impairments in formulating plaintiff's RFC. Plaintiff's objections are, therefore, overruled.

### d. Social Functioning

Plaintiff contends that the ALJ erred in concluding that plaintiff had only moderate limitations in the area of social functioning. As substantial evidence supports the ALJ's conclusion, the court will overrule such error.

As discussed above, the ALJ properly gave great weight to the opinion of Dr. Souther, who concluded that plaintiff had moderate limitations in social functioning. Tr. 225. Indeed, the record is replete with evidence supporting such conclusion as Dr. Brantley reported that plaintiff was friendly, polite, pleasant, and cooperative; Ms. Hoey's reports that plaintiff was cooperative; and plaintiff's own admission that he had no problems getting along with family, friends, and neighbors and that he socialized with his family on a weekly basis. Here, the ALJ

properly accounted for plaintiff's limitations in social functioning by limiting his RFC to work in a setting that had "low social demands." While plaintiff cites to a number of instances where he did not function well with others, plaintiff has not satisfied his burden of establishing that his condition caused limitations beyond those determined by Dr. Souther and included by the ALJ in his RFC finding. Plaintiff's objections based on social functioning are overruled.

### e. Credibility Determination

Finally, plaintiff contends that the ALJ improperly assessed his credibility concerning subjective complaints, including pain. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that:

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III),

which held that "[b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id. at 336.

A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[2]

Step one requires an ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements

---

[2] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

At the first step, the ALJ stated that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 143. At step two, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible" to the extent they were inconsistent with the assessed RFC. Tr. 143. While such boilerplate in and of itself would be insufficient to satisfy the step two analysis, the ALJ went on to explain in great detail why plaintiff's complaints were not fully credible. Indeed, plaintiff admits in his brief that the ALJ properly discredited his complaints due to the fact that plaintiff lied concerning his use of cocaine. Pl Br. at 9. Considering all of plaintiff's arguments concerning the ALJ's step two

analysis, the court finds no merit to such contentions as the ALJ fully explained his decision to not fully credit plaintiff's subjective complaints by fully considering the Craig factors as provided in SSR 96-7p.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment (#16) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#22) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: 4/29/2014

Max O. Cogburn Jr.
United States District Judge